**MOUNT VERNON FIRE INSURANCE COMPANY, Plaintiff,**

v.

**CREATIVE HOUSING LTD.
etc., et ano., Defendants.**

**No. CV–91–4746 (CPS).**

United States District Court,
E.D. New York.

June 30, 1992.

Hoffinger, Friedland, New York City, for plaintiff.

Beck & Iannuzzi, Brooklyn, N.Y., for defendant Creative Housing.

Fitzgerald & Fitzgerald, Yonkers, N.Y., for defendant Hunter.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Mount Vernon Fire Insurance Company ("Mt. Vernon") requests summary judgment in its declaratory judgment action against its insured Creative Housing Ltd. d/b/a Creative Housing Management Co. ("Creative") and Linnette Hunter ("Hunter"), who has filed a civil suit against Creative in state court. Hunter cross moves for summary judgement. For the reasons discussed above, both motions are denied.

The following facts, except where expressly noted or denominated as allegations, are not disputed. Mt. Vernon filed this declarative judgment action to confirm that it has no duty to defend or indemnify its insured, Creative, in a suit brought by Hunter in New York State Supreme Court ("the underlying suit"). In addition, Mt. Vernon wishes this Court to order Creative to reimburse Mt. Vernon for the sums it has already expended in Creative's defense. Currently Mt. Vernon moves for summary judgment arguing that the underlying suit is outside of the policy due to an assault and battery exclusion and that protection is independently vitiated by Creative's delay in advising Mt. Vernon of the occurrence on which the underlying suit is premised.

Mt. Vernon issued a commercial insurance policy to Creative covering premises at 277 Eastern Parkway, Brooklyn ("the premises"). The policy has an exclusion for assault and battery.

> It is agreed that no coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery, and Assault and Battery shall not be deemed an accident, whether or not committed by or at the direction of the insured. All other terms and conditions remain unchanged.

Policy at L 202 (10/88), Exh. D to Motion ("the Policy").

In addition, the policy requires notice of claims by the insured in the following language:

> (a) You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim....
>
> (b) ... You must see to it that we receive written notice of the claim or 'suit' as soon as possible.

Policy §§ IV(2)(a), (b) at page 7.

Hunter alleges she was injured at the premises on April 23, 1991. According to Mt. Vernon, Lloyd Simms, an agent of Creative, was advised of this assault within one week. However, Mt. Vernon was not advised of the incident for approximately five months. Hunter sued Creative by filing the underlying suit in New York State Supreme Court. Mt. Vernon asserts it is not liable to defend or indemnify Creative because of the assault and battery exclusion and because of delay in notification. However, to date, Mt. Vernon has been defending Creative in this matter.

The summons with notice served on Creative by Hunter characterizes the underlying suit as one "to recover damages for injuries to plaintiff caused by the negligence of the defendants." Exh. E to Motion.

Hunter's complaint in the underlying suit states that Creative is liable to her in negligence because Creative failed in its duty of care to take appropriate action to deal with a foreseeable risk of criminal activity in the premises. Complaint ¶ 21, Exh. E to Motion. While not clearly stated, the complaint implies that Hunter was criminally assaulted on the premises. This allegation is clarified by the papers filed by Hunter in support of this motion. She alleges she was assaulted on the premises by a person or persons who were not agents, employees, or servants of Creative.

Mt. Vernon requests summary judgment declaring it has no duty to defend or indemnify Creative in the underlying suit. In addition, Mt. Vernon requests this Court to order Creative to reimburse it for the expenses it has already incurred in defending the underlying suit. Both Hunter and Creative oppose this motion. Hunter cross moves for summary judgment that Mt. Vernon must defend and indemnify Creative for any damages which it must pay.

Both Creative and Hunter argue that the exclusion is at the least ambiguous and that notice was timely given to Mt. Vernon. In addition, Hunter argues that the contract exclusion is legally ineffective.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any disputed material facts, *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990), and the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Id.*

■ The showing needed on summary judgment reflects the burden of proof in the underlying action. The court must consider "the actual quantum and quality of proof" demanded by the underlying cause of action and which party must present such proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Therefore, where the ultimate burden of proof is on the nonmoving party, the moving party meets its initial burden for summary judgment by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). To survive the motion, the nonmoving party must then "make a showing sufficient to establish the existence of [the challenged] element essential to [that party's] case." *Id.* at 322, 106 S.Ct. at 2552.

Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ When other material facts are not disputed, the necessity for contract interpretation does not necessarily bar summary judgment. *See, e.g., United States v. 0.35 of an Acre of Land, Westchester County*, 706 F.Supp. 1064 (S.D.N.Y.1988). However, it is appropriate only if the contract clauses are unambiguous, *Thompson v. Gjivoje*, 896 F.2d at 721, thus invoking the parol evidence rule. *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988). The status of a clause as unambiguous is a threshold issue of law for the court. *Id.* at 26.

■ If a contract clause is unambiguous on its face, parol evidence will not be heard to create an ambiguity. *Metropolitan Life Insur. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.1990). Furthermore, it does not become ambiguous just because suing parties urge opposite interpretations. *Id.*

■ In this diversity suit requesting a determination of an insurer's duties for an incident in a building located in New York City, New York state law supplies the rule of decision. *Klaxon Co. v. Stentor Electronic Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (district court sitting in diversity uses choice of law rules of state where it is located); *Rosenberg v. Pillsbury Co.*, 718 F.Supp. 1146, 1150 (S.D.N.Y.1989) (citing *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985) (New York uses interest analysis)); *Snyder v. National Union Fire Ins. Co.*, 688 F.Supp. 932, 934–35 (S.D.N.Y.1988) (existence of duty to defend would be judged by New York law where New York was location of risk). The New York Court of Appeals recently stated:

It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.

*Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 672, 575 N.E.2d 90, 90 (1991) (citation omitted) (insurer has duty to defend insured when pleadings do not allege a covered occurrence but the insurer has actual

knowledge of facts showing the lawsuit does involve a covered occurrence).

■■■ The duty to defend is broader than the duty to indemnify. *Id.* at 674, 575 N.E.2d at 92 (citations omitted). The duty to defend is enforced by the courts of New York State whenever "the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased." *Id.* (citation omitted). The duty to defend arises both from the complaint and the contract. However, the contract is the "primary point of reference." *Id.* at 675, 575 N.E.2d at 93. This is especially important under liberal rules on the content of the original pleading and the ability to amend the pleadings later to conform to the proof. *Id.* at 675–76, 575 N.E.2d at 93–94.

> [A]n insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision.

*Allstate Ins. Co. v. Zuk,* 78 N.Y.2d 41, 571 N.Y.S.2d 429, 431, 574 N.E.2d 1035, 1037 (1991) (citations omitted). However, the New York courts are hesitant to relieve insurers of an undertaking to defend. *See, e.g., id.* 571 N.Y.S.2d at 431–32, 574 N.E.2d at 1037–38 (guilty plea for second degree manslaughter under a theory of recklessly causing death by mishandling a gun does not allow insurer to refuse to defend civil suit based on same incident under policy exclusion for losses which could be "reasonably expected to result" from criminal acts); *Dayton Beach Park No. 1 v. National Union Fire Ins. Co.,* 175 A.D.2d 854, 573 N.Y.S.2d 700, 701–02 (2d Dept. 1991) (liability policy covering "liability arising out of . . . operations performed for the additional insured by the named insured" covers more than *respondeat superior* liability), *appeal denied,* 78 N.Y.2d 864, 578 N.Y.S.2d 879, 586 N.E.2d 62 (1991); *Community Hospital at Glen Cove v. American Home Assur. Co.,* 171 A.D.2d 639, 567 N.Y.S.2d 122, 123 (2d Dept. 1991) (suit for negligent hiring and supervision of doctor who allegedly sexually assaulted a patient is not within exclusion for liability "arising out of the furnishing of professional health care services") (internal quotations omitted), *appeal denied,* 78 N.Y.2d 853, 573 N.Y.S.2d 467, 577 N.E.2d 1059 (1991). *But see Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 581 N.Y.S.2d 142, 146–48, 589 N.E.2d 365, 369–71 (1992) (exclusion for intentional torts by an insured requires summary judgment that insurer has no duty to defend insured sued for sexual molestation of child even though complaint alleged in the alternative that the volitional actions complained of were done negligently in the sense of being done without intent to cause harm to the children); *United Servs. Auto. Ass'n v. Olin,* 577 N.Y.S.2d 447 (2d Dept.1991) (policy covering losses arising out of negligent operation or maintenance of a motor vehicle does not create duty to defend insured in a suit by passenger of another car based on his alleged stabbing by insured's passenger after automobile collision); *Borg–Warner Corp. v. Insurance Co. of N.A.,* 577 N.Y.S.2d 953 (3rd Dept.1992) (long term, intentional disposal of hazardous waste is not covered by the "sudden and accidental" exception to policy's exclusion of pollution coverage). To be relieved of the duty to defend, the insurer—

> must demonstrate that the allegations of the underlying complaint place that pleading solely and entirely within exclusions of the policy and that the allegations are subject to no other interpretation.

*Dayton Beach,* 573 N.Y.S.2d at 702 (citation omitted).

■■■ When making such determinations the language of the policy is construed in favor of the insured. *Seaboard Surety Co. v. Gillette,* 64 N.Y.2d 304, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984); *30 West 15th St. Owners Corp. v. Travelers Ins. Co.,* 165 A.D.2d 731, 563 N.Y.S.2d 784, 786 (1st Dept.1990). The court only finds for the insurer if the exclusion covers every allegation "in clear and unmistakable language" which is "subject to no other reasonable interpretation." *Seaboard Surety,* 486 N.Y.S.2d at 876, 476 N.E.2d at 275 (citations omitted, internal quotations omitted). The court will not allow the

terms to be "extended by interpretation or implication." *Id.* Therefore, even though New York courts have also stated that insurance contracts are construed according to the ordinary meaning of the language as used by the applicable type of insured party, *see, e.g., In re Ambassador Group, Inc. Litigation,* 738 F.Supp. 57, 62–63 (E.D.N.Y.1990) (collecting cases), when construing exclusions, the cases actually demand a higher standard than apparent from that maxim. *See, e.g., United Nat'l Ins. Co. v. Waterfront Realty Corp.,* 777 F.Supp. 254 (S.D.N.Y.1991) (rape is not unmistakably covered by 'assault and battery' exclusion).

■ Mt. Vernon argues that the language of the policy exclusion unambiguously covers the facts of Hunter's complaint and that, therefore, the use of the term "negligence" does not place the underlying suit outside the exclusion. In support of this argument Mt. Vernon presents several cases construing similar contract language.

Its leading New York case is *United States Liability Insur. Co. v. LaBaff,* No. 89–6043 (Sup.Ct. Onondaga County, April 9, 1990), *aff'd* (4th Dept. Nov. 5, 1991) (unpublished decision, copy attached to Pl. Memo of Law). In *LaBaff* an identical insurance contract clause was held as a matter of law to exclude coverage for an assault made by an employee of insured, Poorhouse, Inc., on a patron.

The only other New York case cited is *New York Cas. Ins. Co. v. Ward,* 139 A.D.2d 922, 527 N.Y.S.2d 913 (4th Dept. 1988). In that case an insurer was given summary judgment holding that it had no duty to defend or to indemnify an insured who was sued for punching an acquaintance in the face. The policy had an exclusion for intentional assault.

In both these cases the alleged assault was made by the insured or his agent. This seems to be a valid distinction under New York law as shown by defendants' leading case, *2500 Motel Corp. v. Investors Ins. Co.,* 169 A.D.2d 604, 564 N.Y.S.2d 750 (1st Dept.1991), *leave to appeal denied,* 78 N.Y.2d 857, 574 N.Y.S.2d 939, 580 N.E.2d 411 (1992). That case discussed a policy which only covered "accidents." The exclusion at issue is quoted as stating that an "assault and/or battery shall not be deemed an accident." *Id.* 564 N.Y.S.2d at 751. The *2500* court gave summary judgment for the insured on the issue of duty to defend and held that as a matter of law the insurer had a duty to indemnify unless the assault had been inflicted by "the insured, its agents or employees." *Id.* The exclusion clause in this case is not identical to the one at issue in *2500* since the language in this case contains the added language "whether or not committed by or at the direction of the insured." Thus, the language of the exclusion in this case clearly and unambiguously covers an assault by another committed by or pursuant to the directions of the insured. Whether or not it excludes an assault by another person caused but not directed by the insured is less clear.

Mt. Vernon's reliance on *American Empire Surplus Lines Ins. v. Bay Area Cab,* 756 F.Supp. 1287 (N.D.Cal.1991), is misplaced. That case's principal holding is that an insurance policy which only covered accidents arising out of the use of a taxi company's business premises did not cover a suit by a passenger for sexual molestation by a driver. The occurrence allegedly took place in the company's vehicle but outside the business' premises. The *Bay Area* court considered this to be neither an "accident" nor to "arise out of use of the premises." Looking at the allegation of negligent hiring, the court stated this may have happened on the premises but was not an accident.

The *Bay Area* court did construe the identical assault exclusion included in the policy at issue here and found that it separately excluded the claim. This may be dismissed as unnecessary to the decision. Furthermore, the *Bay Area* court supplied little analysis and relied for this point on only one case, *Ross v. City of Minneapolis,* 408 N.W.2d 910, 912–913 (Minn.App.1987) (cited by *Bay Area,* 756 F.Supp. at 1290), *review denied,* (Sept. 23, 1987). *Ross* construes a different contract clause:

Anything contained in this policy to the contrary notwithstanding; it is agreed and understood that this policy shall not cover claims for bodily injury or death caused by or arising out of or from an assault and battery of any nature whatsoever whether or not committed by or at the direction of the insured.

*Ross*, 408 N.W.2d at 912.

This language is broader than that used in the clause at bar. As the *Ross* court noted, "the term 'arising out of' requires only a causal connection; it does not require proximate cause." *Id.* Minor differences in policy wording may be dispositive. *See, e.g., Mugavero*, 581 N.Y.S.2d at 148, 589 N.E.2d at 371 (difference between "an insured party" and "the insured party").

The *Bay Area* court, furthermore, does not state what type of scrutiny it used in construing the contract language. It noted the maxim that "coverage under a written insurance policy is solely a matter for judicial interpretation." *Bay Area*, 756 F.Supp. at 1289 (citing *Merced Mutual Ins. Co. v. Mendez*, 213 Cal.App.3d 41, 261 Cal. Rptr. 273 (1989)). The citation clearly suggests that *Bay Area* was interpreting California law. The California standard for judging the inclusiveness of language in insurance contracts is different than the New York rule.

Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.

*Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App.3d 41, 261 Cal.Rptr. 273, 277–78 (1989).

Furthermore, *Bay Area* distinguishes rather than criticizes a case which conflicts with Mt. Vernon's reading of the exclusion. *Underwriters v. Purdie*, 145 Cal.App.3d 57, 193 Cal.Rptr. 248 (1983) (cited *Bay Area*, 756 F.Supp. at 1291).

*Purdie* dealt with an exclusion for injuries caused by firearms, which read as follows:

insurance provided herein for liability ... does not apply to any bodily injury ... caused by, or occurring from any use ... of a fire arm by insured or its agent or employee.

... [n]othing herein contained shall be held to vary, waive, alter or extend any of the exclusions, conditions or other terms of the policy other than as above stated.

*Id.* 193 Cal.Rptr. at 253.

The insured's employee had injured a customer by shooting him with the gun kept behind the counter. The customer sued the insured store for negligently hiring the employee. The *Purdie* court found the occurrence to be covered by the policy because "the events giving rise to the insured's liability are [not] exclusively related to the use and operation of the excluded risk." *Id.* at 254 (reasoning by analogy from cases construing automobile exclusions in homeowners policies).

Appellants correctly contend the liability insurance policy provides coverage for their claimed injuries caused jointly by an insured risk (the insured's negligent hiring of a known violent person) and by an excluded risk (use of a firearm), so long as one of the causes is covered by the policy.

*Id.*

This is directly analogous to the situation at bar in which the injury is said to have been caused by an insured risk (the building owner's negligence) and an uninsured risk (an assault and battery).

The position which the New York Court of Appeals would be likely to take on this issue can be fairly gauged from its analysis of automobile exceptions to homeowners policies.

The leading case on that issue is *Cone v. Nationwide Mut. Fire Ins. Co.*, 75 N.Y.2d 747, 551 N.Y.S.2d 891, 551 N.E.2d 92 (1989). *Cone* found that a broadly worded exclusion of occurrences "arising out of the ownership, maintenance, or use of a motor vehicle," *id.* at 892, 551 N.E.2d at 93, did not extend to a claim for negligently entrusting an all-terrain vehicle to a minor. The minor's father was sued by the person struck by his son while riding the vehicle.

This opinion is particularly striking as the dissent argues that the overwhelming weight of authority in the rest of the country and the plain language of the clause support the contrary result. *Id.* at 892–93, 551 N.E.2d at 93–94 (Kaye, J., dissenting). *But see Douglass v. Hartford Ins. Co.*, 602 F.2d 934 (10th Cir.1979) (deciding that Colorado courts would take position of *Cone* majority). Furthermore, the Court of Appeals based this decision on one case which dealt with a more narrowly drawn clause. *Lalomia v. Bankers & Shippers Ins. Co.*, 35 A.D.2d 114, 312 N.Y.S.2d 1018 (2d Dept. 1970), *aff'd mem.*, 31 N.Y.2d 830, 339 N.Y.S.2d 680, 291 N.E.2d 724 (1972). *Compare Cone*, 551 N.Y.S.2d at 892, 551 N.E.2d at 93 ("Any minor variation in language between 'arising out of' (the [clause] here) and 'based directly on' [the clause in *Lalomia*] is too insignificant to permit varying legal consequences.") (majority opinion) *with Cone*, 551 N.Y.S.2d at 893, 551 N.E.2d at 94 (detailed list of other differences in the clauses' language) (Kaye, J., dissenting).

Mt. Vernon's citation of other authorities is not persuasive. Mt. Vernon relies on a line of cases in the Eastern District of Pennsylvania; the most recent cited is *Sphere Drake Ins. Co. v. Levinson*, 1990 WL 174718 (E.D.Pa. Nov. 9, 1990); *see also Terra Nova Ins. Co. v. North Carolina Ted, Inc.*, 715 F.Supp. 688 (E.D.Pa.1989). Under these cases Mt. Vernon would not be liable to defend or indemnify Creative. However, these cases are construing the policy language under a rule far more pro-insurer oriented than the New York standard.

Finally, Mt. Vernon cites an unpublished decision interpreting Massachusetts law. *United States Liability Ins. Co. v. Seaview*, No. 89–1430–K (D.Mass. May 11, 1990) (copy attached to Pl. Memo. of Law). But the standard for interpreting insurance contracts under Massachusetts law is also more pro-insurer than the New York standard. *See Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966, 968 (1978) (cited in *Seaview*, slip op. at 3).

*Seaview*, slip op. at 5, cites authorities in several additional jurisdictions: *Stiglich v. Tracks, D.C. Inc.*, 721 F.Supp. 1386 (D.D.C. 1989); *Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536 (Tex.App.1989); *Cortinez v. Handford*, 490 So.2d 626 (La.1986); *Illinois Employers Ins. v. Dragovich*, 139 Mich.App. 502, 362 N.W.2d 767 (1984).

*Stiglich* is not on point. That case holds that the insurer has no duty to defend or indemnify a night club which was sued for negligently failing to hire sufficient security personnel to prevent an alleged assault and battery by one patron on another patron. *Stiglich*, however, construes a much broader, clearer, and unambiguous exclusion than the one at bar.

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons, or any other person.... It is understood and agreed that claims, accusations or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery are not covered and no duty to defend any insured from such claims, accusations or charges is provided.

*Stiglich*, 721 F.Supp. at 1387–88.

*Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536 (Tex.App.1989), is not on point. In *Garrison*, the insurer was granted summary judgment holding that it had no duty to defend or indemnify an insured restaurant in a suit for negligently permitting conditions that allowed an assault and battery to occur in its parking lot. The contract clause is also broader than the one at bar.

> Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes claims arising out of assault and battery, whether caused by or at the direction of,

the insured, his/her employee, patrons or any cause whatsoever.

*Id.* at 537.

*Cortinez v. Handford,* 490 So.2d 626 (La. App.1986), also involves a patron who sued the owner of a nightspot for negligence in allowing conditions leading to an assault by another patron. The insurer was granted summary judgment holding that it had no duty to defend or indemnify the nightspot. The exclusion was identical to the one at bar in all relevant provisions.[1]

However, Louisiana also uses the ordinary meaning standard for interpreting unambiguous insurance contracts. *Tracy . v. Travelers Ins. Co.,* 594 So.2d 541, 544 (La. App.1992) (citation omitted), *writ denied,* 596 So.2d 212 (La.).

The final authority is *Illinois Employers Insur. of Wausau v. Dragovich,* 139 Mich. App. 502, 362 N.W.2d 767 (1984). This also is not helpful. Here again, a patron sued an insured business for negligence in permitting conditions leading to an assault and battery upon the patron. The exclusion clause is broader than the instant clause. It excludes injuries "arising out of" as opposed to "based on" assaults and batteries. *Id.* at 768–69.[2] Furthermore, while under Michigan law ambiguities are construed against the insurer, language is given its ordinary meaning. *Id.* at 769 (citations omitted).

Therefore, Mt. Vernon is not entitled to summary judgment on this basis.[3] However, defendants' arguments for summary judgment in their favor on all issues are unpersuasive. While the defendants have

convinced this Court that the exclusion at issue does not "unmistakably" include the underlying cause of action, other disputed issues of material fact remain.

Mt. Vernon argues that defense or indemnification are separately barred by the failure to advise it in writing of the claim within a reasonable time after the occurrence.

 Under the notification clause quoted above, failure to supply the insurer with timely notice avoids coverage even if the insured independently learned of the incident in a timely fashion and even if the insured was not actually prejudiced. *Heydt Contracting Corp. v. American Home Assur. Co.,* 146 A.D.2d 497, 536 N.Y.S.2d 770 (1st Dept.), *appeal dismissed,* 74 N.Y.2d 651, 542 N.Y.S.2d 520, 540 N.E.2d 715 (1989). The obligation to provide notice "as soon as practicable" requires notice in a reasonable time under the circumstances. *Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 340 N.Y.S.2d 902, 906, 293 N.E.2d 76, 78–79 (1972); *Heydt,* 536 N.Y.S.2d at 772. The insured has the burden of showing that the delay was reasonable. *Id.*

 However, "a good-faith belief of non-liability may excuse ... a seeming failure to give timely notice," *Acker–Fitzsimons,* 340 N.Y.S.2d at 906, 293 N.E.2d at 78–79; *Heydt,* 536 N.Y.S.2d at 772, as will lack of knowledge of details of the incident which would make a claim likely. *Kelly v. Nationwide Mutual Insur. Co.,* 174 A.D.2d 481, 571 N.Y.S.2d 258, 259 (1st Dept.1991) (allowing delay of notice until

---

1. The only difference is the addition of the language "provoked or unprovoked" as a description of the assaults and batteries excluded from coverage. *Cortinez,* 490 So.2d at 628.

2. This Court notes that the majority in *Cone* described the difference between "arising out of" and "based on" as too minor to make a legal difference. *Cone,* 551 N.Y.S.2d at 892, 551 N.E.2d at 93. However, this is not the usual attitude in New York law towards these terms. *Id.* at 893, 551 N.E.2d at 94 (Kaye, J., dissenting). Furthermore, the two contracts contained more differences than mentioned by the *Cone* majority. *Id.* Even more importantly, as discussed in *Progressive Casualty Insur. Co. v. Jack-*

*son,* 151 Misc.2d 479, 573 N.Y.S.2d 556, 558–59 (Sup.Ct. Oswego County 1991), this statement by the Court of Appeals must be viewed as an instance of interpreting the exclusion in favor of the insured. It does not imply that a similar difference in language would be interpreted in favor of an insurer. Furthermore, the insurance industry seems to believe the two terms are not synonymous. *Cf. Ethicon v. Aetna,* 737 F.Supp. 1320, 1334 (S.D.N.Y.1990) (quoting policy which uses language "based upon or arising out of.")

3. Hunter. also supplies several additional strained readings of the exclusion clause. This Court does not need to discuss them.

filing of the suit when incident involved was seemingly too trivial to involve damages). New York courts only allow this to be decided as a matter of law if there is no reasonable excuse or mitigating factor at issue. *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F.Supp. 209, 212 (S.D.N.Y.1990). Otherwise the issue involves findings of fact to be determined at trial. *Id; see also Winstead v. Uniondale School Dist.*, 170 A.D.2d 500, 565 N.Y.S.2d 845, 847 (2d Dept.1991).

The *Winstead* court found an issue of fact in the reasonableness of a six-year delay in notification. That court held that the reasonableness of the delay turned on the fact question of whether the insured's belief in non-liability was reasonable under the circumstances. *Id.* at 847. *Winstead* involves a third-party complaint by a school district against a student who was allegedly partially responsible for an accident in which another student was injured. The injured party had only sued the school district. The insured did not notify his insurer until he was actually served with a third-party complaint. The *Winstead* court held that the reasonableness of this delay turned on fact issues such as the triviality of the accident which may have led the insured to believe he had no liability or would not be sued.

 Here insured's liability will turn on the extent of its duty to take additional precautions. This will turn on *inter alia* the precautions actually taken, the level of crime in the area, and the notice of local crime to the insured. Under New York law a landlord's duty to prevent criminal activity on his premises depends on its foreseeability. *See, e.g., Kazanoff v. United States*, 945 F.2d 32, 38–40 (2d Cir.1991); *Maysonet v. KFC, Nat. Management Co.*, 906 F.2d 929, 931 (2d Cir.1990); *Waters v. New York City Housing Authority*, 69 N.Y.2d 225, 513 N.Y.S.2d 356, 505 N.E.2d 922 (1987); *Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 429 N.Y.S.2d 606, 613, 407 N.E.2d 451, 458 (1980); *Camacho v. Edelman*, 176 A.D.2d 453, 574 N.Y.S.2d 356 (2d Dept.1991); *Tarter v. Schildkraut*, 151 A.D.2d 414, 542 N.Y.S.2d 626 (1st Dept.), *appeal denied*, 74 N.Y.2d 616, 549 N.Y.S.2d 961, 549 N.E.2d 152 (1989).

 Therefore, though under extreme conditions a finding of the level of duty could be made as a matter of law, *see, e.g. Kazanoff v. United States*, 753 F.Supp. 1056, 1060–62 (E.D.N.Y.1990) (granting summary judgment for landlord holding that he has not breached duty of care), *aff'd*, 945 F.2d 32 (2d Cir.1991), movant has not supplied the necessary facts for this Court to decide if a duty of care has been breached. Even more facts are needed to decide if the insured could have reasonably believed that he had not breached the duty of care and, therefore, could not have been liable. If insured had such a good-faith belief reasonably held, he is excused from not reporting the incident to his insurer before he had notice of the suit. This was the holding in *Beach Haven Apts. v. Allcity Ins. Co.*, 581 N.Y.S.2d 689, 690 (2d Dept. 1992) (22–month delay till commencement of suit is not unreasonable delay of notice to insurance company by rental building sued by a tenant for negligence which allegedly allowed an assault by third party). While *Beach Haven* partially turned on the scarcity of this type of suit in 1979, it still stands for the proposition that the circumstances allowing liability are material factual issues when deciding reasonable delay in notification of this type of occurrence.

In addition, defendants dispute Mt. Vernon's assertions of the degree of delay. Mt. Vernon bases the date of Creative's notice of the underlying incident on a statement by superintendent Lloyd Simms that he was told of the assault one week after it occurred. Creative appends a xerox of an unsworn longhand statement allegedly made by Simms that he was advised at that time that Hunter had been assaulted outside the premises. The statement does not state when or if Simms was told that the assault occurred on the premises. The only affidavit submitted is by counsel. Since other material factual issues exist, this Court does not discuss the efficacy of such a statement to stave off summary judgment.

Therefore, for the reasons discussed above, the parties' cross-motions for summary judgment denied.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.