AMERICAN STATES INSURANCE
CO., INC., Respondent,

v.

Jerry PORTERFIELD, d/b/a Porterfield
Construction, Defendant,

and

James Devon Scarborough,
b/n/f, Appellant.

James Devon SCARBOROUGH,
et al., Appellants,

v.

Jerry PORTERFIELD, d/b/a Porterfield
Construction, Respondent.

Nos. WD 45714, WD 45806.

Missouri Court of Appeals,
Western District.

Sept. 8, 1992.

Max Von Erdmannsdorf and Michael D.
Gibbons, Kansas City, for appellants.

Jack T. Bangert, Kansas City, for defendant.

Gordon N. Myerson, Kansas City, for
respondent.

Before TURNAGE, P.J., and
BRECKENRIDGE and HANNA, JJ.

TURNAGE, Presiding Judge.

This is a consolidated appeal involving
two separate but related lawsuits—a personal injury action and a declaratory judgment action. The personal injury action
was brought by James Devon Scarborough,
a minor, and his parents, James and Beth
Scarborough, against Jerry Porterfield
d/b/a Porterfield Construction Company.
The declaratory judgment action was
brought by American States Insurance
Company. The court in each case entered
summary judgment—in the personal injury
action in favor of Porterfield and in the
declaratory judgment action in favor of
American. On this appeal the Scarboroughs contend there were genuine issues
of material fact in both actions which precluded summary judgment.[1] Affirmed.

---

1. The parents' separate appeal in the declaratory judgment suit was dismissed due to their failure to timely file their notice of appeal. Notwithstanding the dismissal of their appeal, the Scarboroughs contend that since their interests are so commingled with those of their son, a reversal in the personal injury suit would necessarily support a reversal for them as non-appealing parties. (citing *Shelter Mutual Insurance Co. v. Briggs,* 793 S.W.2d 862 (Mo. banc 1990)).

On August 14, 1989, Beth Scarborough was driving her car in a westerly direction on 210 Highway near the intersection of Searcy Creek Parkway in Clay County. Her husband, James Craig Scarborough, and minor son, James Devon Scarborough, were passengers. At the same time, Maurice Richey, an employee of Porterfield, was eastbound in his truck on 210 Highway. Richey's truck was pulling a trailer carrying a small tractor. As Richey was proceeding along the highway, the trailer became unhitched and crossed the divided highway entering the opposite lane of oncoming traffic where it collided with the Scarborough vehicle. All of the Scarboroughs were injured as a result of the collision.

The Scarboroughs brought the personal injury action against Porterfield. At the time of the accident, Porterfield maintained two policies with American. The first policy was automobile liability coverage with combined single limits of $100,000 per person and $300,000 per accident. The second policy was commercial general liability coverage with the same limits.

The Scarboroughs entered into a settlement with Porterfield and agreed to accept the limit of all remaining insurance proceeds under the auto liability policy, which amounted to approximately $281,800.29, in partial settlement of their claims. The Scarboroughs reserved the right to further pursue Porterfield to the extent of any insurance available under his CGL liability policy with American. In consideration of these payments, the Scarboroughs signed a covenant not to execute and a limited release whereby they agreed never to execute upon any of Porterfield's personal or business assets. The court approved the terms of the settlement.

After the settlement was approved, American filed a declaratory judgment action requesting the court to declare that the CGL policy did not provide coverage for the automobile accident. The trial court held that the CGL policy did not apply to the accident and granted summary judgment in favor of American.

Shortly thereafter, Porterfield filed a motion for summary judgment in the personal injury suit claiming that there was no genuine issue as to any material fact since the parties had agreed to a partial settlement which limited the Scarboroughs' recovery to the amount of any coverage available under the CGL policy. Porterfield further contended that since the court in the declaratory judgment action had held that the CGL policy provided no coverage for the accident, the Scarboroughs basically had no viable claim and, therefore, he was entitled to summary judgment as a matter of law. The court entered summary judgment in favor of Porterfield.

■ The sole issue in this case is whether the CGL policy provides coverage for injuries arising out of the automobile accident. Disputes arising from interpretations and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute. *Moore v. Commercial Union Ins. Co.,* 754 S.W.2d 16, 18[2] (Mo.App.1988). Since there is no dispute of facts in this case and it involves the interpretation of an exclusion clause in the CGL policy, this court will examine the plain language of the relevant insurance provisions.

The CGL policy issued to Porterfield by American provides, in pertinent part:
1. INSURING AGREEMENT.
(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
2. EXCLUSIONS.
This insurance does not apply to: ...
(g) "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaded to any insured. Use includes operation in "loading and unloading."

Under the definition section a truck and trailer come within the definition of "auto."

In this case, the Scarboroughs have not alleged that the language in the CGL policy

is ambiguous or unclear. Nonetheless, the Scarboroughs contend that the CGL policy should provide coverage for the accident because they allege that Porterfield was negligent in the supervision of his employees in the proper method of hitching the trailer to the truck.

In support of their contention that the negligent supervision of employees is a separate and concurrent act of negligence which does not fall within the automobile exclusion of the CGL policy, the Scarboroughs rely primarily on *Braxton v. United States Fire Ins. Co.,* 651 S.W.2d 616 (Mo. App.1983). *Braxton* is distinguishable because the court found an ambiguity in the policy.

■ The Missouri Supreme Court has held that "where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." *Harrison v. MFA Mutual Ins. Co.,* 607 S.W.2d 137, 142[6] (Mo. banc 1980). Further, unless the language of the policy is ambiguous, the court is bound to enforce its terms as written. *Hempen v. State Farm Mut. Auto. Ins. Co.,* 687 S.W.2d 894[2] (Mo. banc 1985).

In this case, Porterfield procured insurance coverage for two distinct types of risks—those involving the use, ownership and maintenance of automobiles to be covered under his automobile liability policy and general business liability risks to be covered under his CGL policy. The CGL policy provided insurance coverage specifically for non-auto-related incidents. In *St. Paul Mercury Indemnity Co. v. Standard Accident Ins. Co.,* 216 Minn. 103, 11 N.W.2d 794, 797 (1943), the court noted that it is common practice among insurance companies and those obtaining insurance to divide coverage according to the risks involved. This is exactly what Porterfield has done in the case at bar. The court in *St. Paul* further noted that:

General and comprehensive liability policies are issued to cover all risks incident to [the] operation of a business, except those involved in the ownership, maintenance, operation, and use of automobiles.

Because the ownership, maintenance, operation, and use of automobiles involves special and peculiar risks as an incident thereof, to which the general business of the insured is not subject, such risks are excluded from the general coverage and are covered as a special class by automobile liability policies.... The line is drawn between risks incident to the general business and those incident to the automobile while being used to accomplish limited operations involved in such business.

*Id.,* 11 N.W.2d at 797.

Although the Scarboroughs contend that the CGL policy does not necessarily exclude certain prior negligent acts, several jurisdictions, including Missouri, have held that acts such as negligent entrustment, negligent hiring, negligent supervision and training are merely incidental to the ownership, operation or use of the vehicles involved in the accident and, therefore, are not covered because of exclusionary provisions similar to those in the CGL policy here. *Shelter Mut. Ins. Co. v. Politte,* 663 S.W.2d 777[2] (Mo.App.1983); *Allstate Ins. Co. v. Jones,* 139 Cal.App.3d 271, 188 Cal. Rptr. 557 (1983); *Scarfi v. Aetna Casualty & Surety Co.,* 233 N.J.Super. 509, 559 A.2d 459, 464 (1989) (citing *Ruggerio v. Aetna Life & Casualty Co.,* 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985)); *Standard Mutual Ins. Co. v. Bailey,* 868 F.2d 893 (7th Cir. 1989); *Rubins Contractors, Inc. v. Lumbermens Mutual Ins. Co.,* 821 F.2d 671 (D.C.Cir.1987); *Motorists Mutual Ins. Co. v. Kulp,* 688 F.Supp. 1033, 1037–38 (E.D.Pa.1988), aff'd, 866 F.2d 1411 (3d Cir. 1988)).

In *Kulp,* the court held that a homeowner's policy containing a standard automobile exclusion, which was similar to the exclusion in the CGL policy in the case at bar, did not provide coverage for injuries arising out of the "ownership, maintenance or use of a 'motor vehicle' owned by [the] insured" notwithstanding the movants' characterization of their claims as negligent supervision and negligent entrustment. *Kulp,* 688 F.Supp. at 1035–37[4].

Although *Kulp* involved a homeowner's policy, the court focused on the exclusion rather than the type of policy. The court held there was no coverage because liability was triggered not by the negligent supervision or entrustment, but rather by the use of the motor vehicle involved, which in that case was a mini-bike.

Similarly, in *Scarfi*, the court held that injuries arising out of an automobile accident were excluded under a CGL policy which contained an automobile exclusion identical to the one at issue in this case. *Scarfi*, 559 A.2d at 461–62. The *Scarfi* court emphasized that "the [CGL] policy was clearly designed to exclude coverage for personal injuries ... arising out of automobile accidents." *Id.* at 462. Moreover, notwithstanding the allegations of negligent driving and training, the court noted, as did the *Kulp* court, that the underlying action was triggered only when the injury occurred as a result of the accident and "any injuries that resulted from that accident arose out of the ownership, operation or use of the truck." *Id.* at 463.

In this case, the injuries arose out of the use of the truck and not from negligent supervision and therefore there is no coverage for any injuries arising out of the automobile accident. The summary judgment in the declaratory judgment suit was correct.

The summary judgment in the personal injury action was entered soon after judgment was entered in the declaratory judgment action and before that case was appealed. The Scarboroughs contend that the court should have awaited the outcome of the appeal of the declaratory judgment action. However, in view of the fact there was no coverage under the CGL policy and there could be no recovery in the personal injury action in that event, there was no error in entering summary judgment in the personal injury action.

The judgment in both cases is affirmed.

All concur.