LAURENCE LALOMIA, Individually and as Administrator of the Estate of JEAN LALOMIA, Deceased, et al., Respondents-Appellants, *v.* BANKERS & SHIPPERS INSURANCE COMPANY et al., Respondents, and INSURANCE COMPANY OF NORTH AMERICA, Appellant.

Second Department, July 27, 1970.

*Marvin, Montfort, Healy, McGuire & Salley* (*E. Richard Rimmels, Jr.*, of counsel), for appellant.

*Shayne, Dachs, Weiss, Kolbrener, Levy & Moe Levine* (*Norman H. Dachs* of counsel), for respondents-appellants.

*Curtis, Hart & Munro* (*Edward J. Hart* of counsel), for Bankers & Shippers Insurance Company, respondent.

*Albert P. Thill* for Liberty Mutual Insurance Company, respondent.

*Gill & Sheehan* (*James A. Gill* of counsel), for Maryland Casualty Company, respondent.

BENJAMIN, J. This action for a declaratory judgment calls upon us to determine which, if any, policies of insurance provide coverage for the plaintiffs, who were involved in a collision with a motorized bicycle.

The tragic accident out of which this litigation arose claimed the lives of 12-year-old Michael Maddock and of Jean Lalomia, a wife and the mother of four children. At the time of the collision Michael was operating a motorized bicycle, that is, a bicycle from which various operational parts, such as the

pedals, had been removed and to which a 3½ H.P. lawn mower gasoline engine had been added. The motorized bicycle collided with an automobile being operated by Jean Lalomia.

Defendant Bankers & Shippers Insurance Company (hereinafter called B & S) had issued two policies of automobile insurance to defendant Daniel Maddock, Michael's father, each of which covered a different specific automobile. Under their terms, these policies would only provide coverage for the motorized bicycle if it were held to be an after-acquired "private passenger automobile". Defendant Maddock had not been required to notify B & S of the acquisition of the motorized bicycle under the terms of the policies, as it had been acquired within 30 days before the accident.

The motorized bicycle, which is classified as a motor-driven cycle (Vehicle and Traffic Law, § 124), is a motor vehicle within the meaning of the Vehicle and Traffic Law (see *Matter of Allcity Ins. Co. [Di Lorenzo]*, 33 A D 2d 665; *Early v. MVAIC*, 32 A D 2d 1042; *Matter of Askey [General Acc. Fire & Life Assur. Corp.]*, 30 A D 2d 632, affd. 24 N Y 2d 937; Vehicle and Traffic Law, § 125). However, it is not a private passenger automobile either within the meaning of the B & S policies or of regulation 35-A promulgated by the Superintendent of Insurance (11 NYCRR 60.1). B & S is therefore not required to defend or indemnify defendant Maddock as a result of the accident.

To hold that the motor-driven cycle was not a motor vehicle would allow the indiscriminate use of such dangerous contraptions by youngsters on our public highways. It is only when such vehicles are registered and made to conform to minimum standards of safety (the vehicle involved herein had no brakes and could be made to stop only by "shorting" the sparkplug) that accidents of this type can be avoided.

The extension of coverage in policies insuring specific private passenger automobiles to after-acquired private passenger automobiles was not intended to alter the nature of the risk involved. It would be unfair to compel an insurer to automatically extend coverage to a motor-driven cycle, motorcycle or racing car by a strained construction of the words "private passenger automobile".

Defendant Insurance Company of North America had issued a homeowner's policy to defendant Maddock. The policy obligated the insurer to pay all sums which the insured would become legally obligated to pay as damages because of personal injury or property damage. However, the policy excluded from its coverage "the ownership, maintenance, operation, use, loading or unloading" of automobiles or midget automobiles while away

from the insured premises. With certain exceptions, the policy defined "automobile" as a "land motor vehicle". As the accident herein took place some three or four blocks from the insured premises, and as the motor-driven cycle was a motor vehicle, this insurer is not liable to defend or indemnify defendant Maddock, either individually or as administrator of Michael Maddock's estate (Michael was also an insured as defined by the policy), insofar as the ownership, maintenance, operation or use of the motorized bicycle is concerned.

However, the complaint in the plaintiffs' negligence action alleges, in effect, that Daniel Maddock was guilty of negligence in placing a dangerous instrumentality in the possession of and at the disposal of a 12-year-old boy, knowing that it could be used in a dangerous manner likely to cause harm to others. These allegations set forth a valid cause of action grounded in common-law negligence (cf. *Steinberg* v. *Cauchois*, 249 App. Div. 518, 519; *Kuchlik* v. *Feuer*, 239 App. Div. 338, affd. 264 N. Y. 542; *Carmona* v. *Padilla*, 4 A D 2d 181, affd. 4 N Y 2d 767). This theory of action is not directly related to the "ownership, maintenance, operation, use" of the vehicle and imposes an obligation upon the insurer within the terms of its policy (see *McDonald* v. *Home Ins. Co.*, 97 N. J. Super. 501).

Defendant Liberty Mutual Insurance Company is liable under the terms of the uninsured motorist endorsement contained in the policy which it issued to plaintiff Laurence Lalomia, who was Jean Lalomia's husband. Although that endorsement, as it appears in the policy, refers to "uninsured automobiles", it is deemed to cover all uninsured motor vehicles (cf. *Early* v. *MVAIC*, 32 A D 2d 1042, *supra*; Insurance Law, § 167, subd. 2-a). The motor-driven cycle involved herein was an uninsured motor vehicle within the meaning of the endorsement.

The obligation imposed upon the Insurance Company of North America under its homeowner's policy is limited to the theory of negligently permitting the use and operation of a dangerous mechanism. As there is no other policy in force with respect to the use, maintenance or operation of the motor-driven cycle, the uninsured motorist endorsement contained in the Liberty policy is applicable. The judgment should be modified accordingly, on the law and the facts, without costs.

HOPKINS, Acting P. J., MUNDER, MARTUSCELLO and KLEINFELD, JJ., concur.

Judgment modified, on the law and the facts, by (1) striking therefrom subdivision (b) of the first decretal paragraph and substituting therefor a provision that the defendant Insurance

Company of North America is required to defend and indemnify defendant Daniel Maddock, individually, for any judgment that may be awarded against him on behalf of the plaintiffs arising out of an accident which occurred on June 5, 1966 at Lindenhurst, New York, and is described in the complaint, upon the theory that the said Daniel Maddock negligently permitted a child of tender years to possess and use a dangerous instrumentality knowing that it could be used in a dangerous manner likely to cause harm to others, as alleged in paragraph "Twenty-First" of the plaintiffs' complaint in the negligence action arising out of the said accident; and (2) striking therefrom subdivision (f) of the first decretal paragraph and substituting therefor a provision that the claim of the plaintiffs against the defendant Liberty Mutual Insurance Company is covered under the terms and conditions of the uninsured motorist endorsement of the policy issued by it to the plaintiff Laurence Lalomia. As so modified, judgment affirmed, without costs.